[Civ. No. 12100. Third Dist., Nov. 12, 1969.]

Estate of ANTONIOS LEGATOS, Deceased.
HOUSTON I. FLOURNOY, as State Controller, et al.,
Petitioners and Respondents, v.
BANK OF CALIFORNIA, as Executor, etc., et al., Objectors and Appellants.

658

## COUNSEL

James K. Bullock, Lenard S. Zipperian and Donald Ingoglia for Objectors and Appellants.

Myron Siedorf and Robert G. Harvey for Petitioners and Respondents.

## OPINION

**DAVID, J. pro tem.**\*—Appeal from order of the Superior Court of Sacramento County in probate, fixing the amount of inheritance tax.

Under the will of Antonios Legatos, who died on October 6, 1964, a trust was created for his wife, Hresoula Legatos, by transferring all of his property to the Bank of California National Association, as trustee. The trustee was directed (a) to pay or apply all the net income of the trust estate for her benefit during her lifetime; (b) to pay to her or apply for her benefit such amounts from the principal of the trust estate as she designates in writing; to pay or apply for her benefit any amounts from principal for her proper care, maintenance and support, in the trustee's absolute discretion.

Likewise, relatives and charities were listed as remaindermen to receive the residue of the trust estate upon her death. But Hresoula Legatos was given a power of appointment whereby she was authorized to revoke, delete from or add to any of the listed legatees and devisees.

Following the death of Antonios Legatos, Hresoula Legatos, under (b) above, directed the trustee to immediately deliver to her the entire corpus of the intended trust estate. This delivery was approved in the court's decree of preliminary distribution.

The inheritance tax appraiser filed a report upon this devolution of property, finding due an inheritance tax of $22,652.67, which finding was confirmed, over objections of The Bank of California National Association, as executor, and Mrs. Legatos. This appeal followed.

It is conceded the trust estate consisted of community property, which appellants contend is free of inheritance tax under the first sentence of section 13551, subdivision (a), of the Revenue and Taxation Code, which then read "None of the community property transferred to a spouse is subject to this part." The respondent State Controller contends that the transfer is governed by the remaining sentence of that section, which read:

---

\*Retired judge of the superior court sitting under assignment by the Chairman of Judicial Council.

"If, however, on the death of the husband the wife is given by will either (1) a life estate in the one-half of the community property subject to the testamentary disposition of the husband or (2) a general or special power of appointment in conjunction with such one-half, all of such one-half is subject to this part."

■ This section speaks as of the date of death of Antonios Legatos. Subject to probate, Mrs. Legatos then became vested with the life estate and power of appointment of which section 13551, subdivision (a), speaks. Only outright transfers of the community property to the wife were intended to be exempt.[1]

We must reject the contention that her power to demand the conveyance of the corpus to her converted her interest into a fee estate. This contention has been made frequently and rejected by the California courts. (*Estate of Nichols,* 199 Cal.App.2d 783, 795 [19 Cal.Rptr. 93]; *Estate of Smythe,* 132 Cal.App.2d 343 [282 P.2d 141], discussing the authorities; Rest., Property, § 323.)

The decree of preliminary distribution recognized and affirmed her right after the trust was set up to demand and receive the corpus, and thus to terminate the trust. Though *a priori,* one may argue that this defeats the overall intent of the testator; this matter was resolved otherwise by the probate court. In doing so the probate court properly held she was liable for the inheritance tax, if the language of Revenue and Taxation Code section 13551, subdivision (a), can properly be held applicable.

The principal authority cited by appellant, *Estate of Loewenstein* (1951) 37 Cal.2d 843 [236 P.2d 566], does not resolve this question. In relation to a gift in trust of insurance proceeds, after the exercise of a similar power to withdraw, Melanie Loewenstein was held to have had unqualified ownership of the resulting fund; that the remaindermen were cut off; and that upon her death the succession to that fund by her son, Herbert Loewenstein, was taxable. (Rev. & Tax. Code, § 13601.) The court did not pass upon the taxability of the estate to her, stating (*idem.* p. 848), "The state is not here taxing either the exercise or the nonexercise of that donated power; and whatever taxability was involved in the gift of the power, or the exercise or nonexercise thereof, is outside the domain of consideration."

Although the trial court correctly applied the section as written, appellant contends Revenue and Taxation Code section 13551, subdivision (a), denied equal protection of the law to surviving widows, because at that time a surviving husband took a tax-free life estate or power

---

[1]Consult: Martin and Miller, *Estate Planning and Equal Rights* (1961) 36 State Bar J. 613, and sequel (1965) 40 State Bar J. 706.

of appointment under similar circumstances. We conclude this contention is valid.

"The respective interests of the huband and wife in community property during continuance of the marriage relation are present, existing and equal interests. . . ." (Civ. Code, § 161a.)

For inheritance tax purposes it is immaterial whether community property was acquired before or after 1927 when the present definition of the wife's interest was enacted. (*Kirkwood* v. *Bank of America* (1954) 43 Cal.2d 333 [273 P.2d 532].)

Prior to 1927 the husband was regarded as sole and exclusive owner of the community property, and the wife's interest was a mere expectancy. (*Lahaney* v. *Lahaney* (1929) 208 Cal. 323 [281 P. 67].) Under this rule the husband did not take the community property by succession or descent upon the wife's death but held it as owner. (*McKay* v. *Lauriston* (1928) 204 Cal. 557 [269 P. 519].)

Therefore, we are justified in concluding that the discrimination made between the husband's and the wife's estate by section 13551, subdivision (a), as it read before 1965, rests entirely upon that distinction which ceased to exist 40 years ago. Nor may it now rest upon the archaic presumption that the husband deserves special consideration as the family breadwinner.[2] Our present currency may carry the portrait of a man on its face, but it is given validity by the signature of a woman as Treasurer of the United States.

During the lifetime of the wife, the husband in California has the management and control of the community property. But in this he is a fiduciary and is no more than an equal partner. (*Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247].) ■ We sustain appellant's contention that applying Revenue and Taxation Code section 13551, subdivision (a), to Hresoula Legatos, the surviving spouse, receiving community property from her husband, denied her the equal protection of the laws. (Cf. *Matter of Application of Miller,* 162 Cal. 687, 698 [124 P. 427].) ■ Equality of burden is a fundamental principle of taxation. Equal protection demands that similar property be taxed by the same yardstick to those similarly situated. (*County of San Bernardino* v. *Way,* 18 Cal.2d 647, 658 [117 P.2d 354]; *Gowens* v. *City of Bakersfield* (1960) 179 Cal.App.2d 282, 285-286 [3 Cal.Rptr. 746]; *Montgomery*

---

[2]In the United States 15,908,000 women with a husband in the home constituted in 1967 some 36.8 percent of the total U. S. labor force of persons 18 years of age and over: consult Special Labor Report No. 94 (Mar. 1967) U. S. Department of Labor, Bureau of Labor Statistics, Marital and Family Characteristics of Work, A-6, Table B.

*Ward & Co.* v. *State Board of Equalization* (1969) 272 Cal.App.2d 728, 765-768 [78 Cal.Rptr. 373], hear. den. Aug. 6, 1969.)

██ Administrative convenience, such as preventing loss of revenue to the state, is not a valid basis for classification. (See *Cumberland Coal Co.* v. *Board of Revision* (1931) 284 U.S. 23, 25 [76 L.Ed. 146, 148, 52 S.Ct. 48].) While classification based upon physical differences between the sexes has been sustained (*Clark* v. *California Emp. Stabilization Com.,* 166 Cal.App.2d 326 [323 P.2d 716]; *Muller* v. *Oregon,* 208 U.S. 412 [52 L.Ed. 551, 28 S.Ct. 324]), respondents do not suggest that this applies. Both in their incidence and innate characteristics tax moneys are sexless and soulless. Respondents argue that Revenue and Taxation Code section 13551, subdivision (a), is part of the mutual give and take of our community property system, and that the discrimination between the husband and wife in dispostion of their estates was justified by other provisions of the community property law which allegedly favor the wife. But Revenue and Taxation Code section 13551, subdivision (a), is not part of the community property law. It has no effect on the community interests while both husband and wife are living, and it takes effect only after death has terminated the community. It does not determine the nature of the property, nor does it affect ownership or management of property. In holding the section invalid as it read at the time Antonios Legatos died, we only refuse to give effect to a law which imposes unequal burdens of taxation upon property of the same character by an invalid classification unsupported by any rational distinction suggested by respondents, nor any that we have been able to divine.

Article I, section 21, of our state Constitution provides, "nor shall any citizen, or class of citizens, be granted privileges or immunities which, upon the same terms, shall not be granted to all citizens."

While despite the broad language of the prohibition, a "class of citizens" have been afforded privileges and immunities not granted to all citizens, courts hold that legislative classification must be based upon rational differences in relation to the subject matter. (*Shelley* v. *Kraemer* (1947) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441]; cases 11 Cal.Jur.2d 759.) ██ Even in inheritance taxation the classification must have a fair and substantial relation to the object of the legislation. (*Dane* v. *Jackson,* 256 U.S. 589, 599 [65 L.Ed. 1107, 1113, 41 S.Ct. 566]. The sex or former marital status of the grantee of a disposable half of community property is not a relevant distinction for inheritance tax purposes. This fact was recognized by the Legislature in 1965 when Revenue and Taxation Code section 13551, subdivision (a), was amended

to read, simply, "None of the community property transferred to a spouse is subject to this part, except as provided in Section 13694." Taxes now are imposed by section 13694 on the value in excess of a life estate in the donor's half interest in community property which is subject to the surviving spouse's power of appointment, whether it be the husband or wife who survives. (See also Rev. & Tax. Code, § 13696.)

The order appealed from is reversed with directions to enter an order finding no state inheritance tax due so far as the same is based on the items here considered.

Pierce, P. J., and Regan, J., concurred.

The petition of respondent Flournoy for a hearing by the Supreme Court was denied January 8, 1970.