[No. B199521. Second Dist., Div. Four. June 16, 2008.]

TRACFONE WIRELESS, INC., Plaintiff and Appellant, v.
COUNTY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

Silverstein & Pomerantz, Robert R. Gunning, Edwin P. Antolin and Amy L. Silverstein for Plaintiff and Appellant.

Raymond G. Fortner, Jr., County Counsel, and Albert Ramseyer, Principal Deputy County Counsel, for Defendant and Respondent.

**OPINION**

**MANELLA, J.—**

## INTRODUCTION

Appellant TracFone Wireless, Inc. (TracFone), paid the County of Los Angeles (County) use taxes from its own funds, and later sought a refund when it determined that the long distance service it provided was tax exempt. Respondent County refused the request for a refund, and this action ensued. The trial court held that appellant lacked standing, because it was the service provider responsible for collecting the tax from the consumer, and thus not

the intended "taxpayer" under the Los Angeles County Code section imposing the tax. The trial court also held that the first amended complaint (FAC) failed to state a cause of action for a tax refund, because appellant had paid the tax voluntarily. We hold that appellant's payment of the tax conferred standing, and that the FAC adequately alleged an involuntary payment. Accordingly, we reverse the judgment.

## BACKGROUND

The FAC alleged that TracFone was a Florida corporation in the business of selling prepaid telephone calling cards throughout the United States, including California, for use in cellular telephones also sold by TracFone. The cards provided access to a national telephone network, allowing callers to telephone almost anywhere in the United States. The FAC alleged that most sales were made to retailers who resold the cards to the ultimate consumers. Between January 2005 and January 2006, TracFone paid a user tax to the County of Los Angeles, amounting to 5 percent of the value of calls made with the cards in the county, viz., $120,151.11. The FAC alleged that TracFone did not collect the tax from consumers because it was unable to do so, having no point of sale contact with the vast majority of ultimate consumers. The FAC further alleged TracFone's belief that respondent would hold appellant liable for the tax, and that appellant paid the tax to avoid an assessment with interest and penalties.

The FAC alleged that under Los Angeles County Code section 4.62.060(D), telephone communication services that were not subject to the tax imposed under section 4251 of the Internal Revenue Code were also exempt from the county tax. Beginning in 2005, several federal courts held that section 4251 did not apply to certain national calling plans.[1] The FAC alleged that in May 2006, consonant with these holdings, the Internal Revenue Service issued notice 2006-50, stating that the federal excise tax did not apply to cards of the type sold by TracFone. Accordingly, appellant claimed a refund of the taxes paid, and filed this action when respondent denied its claim.

The factual allegations of the FAC were incorporated into three counts, each demanding a refund of the tax under a different legal theory. The first demanded a refund on the ground that TracFone was exempt from the tax

---

[1] Those courts held that long distance telephone service that was billed by call duration only, not by distance, was not subject to federal excise taxes. (See *Reese Bros., Inc. v. U.S.* (3d Cir. 2006) 447 F.3d 229; *Fortis, Inc. v. U.S.* (2d Cir. 2006) 447 F.3d 190; *National Railroad Passenger Corp. v. U.S.* (D.C. Cir. 2005) 369 U.S. App.D.C. 1 [431 F.3d 374]; *OfficeMax, Inc. v. U.S.* (6th Cir. 2005) 428 F.3d 583; *American Bankers Ins. Group v. U.S.* (11th Cir. 2005) 408 F.3d 1328.)

under the Los Angeles County Code; the second charged that respondent's refusal to refund the tax violated appellant's constitutional right to due process; and the third alleged that respondent's refusal to refund the tax constituted an unconstitutional taking of private property without adequate compensation.

Respondent interposed a general demurrer to each cause of action and special demurrers for uncertainty, claiming that the facts necessary to state a cause of action were not alleged with sufficient particularity. The trial court sustained the general demurrers for the reasons stated in them: (1) because appellant lacked standing to seek a refund, having paid the tax as a tax collector, not a taxpayer, and (2) because appellant had paid the tax voluntarily. The court denied leave to amend and dismissed the action March 26, 2007. Appellant timely filed a notice of appeal from the judgment of dismissal.

## DISCUSSION

### 1. *Standard and Scope of Review*

On appeal from a judgment of dismissal entered after a general demurrer is sustained, our review is de novo. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415 [106 Cal.Rptr.2d 271, 21 P.3d 1189].) "In the construction of a pleading, for the purpose of determining its effect, its allegations must be liberally construed, with a view to substantial justice between the parties." (Code Civ. Proc., § 452.) " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . .' . . . [W]e give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) We may also consider matters that have been properly judicially noticed. (*Ibid.*)

Appellant contends the court erred in holding that appellant was a volunteer who had no standing to seek a refund of monies erroneously paid as taxes. As lack of standing and failure to adequately allege an involuntary payment were the sole grounds stated in the general demurrers and relied upon by the trial court, we may affirm the judgment of dismissal only if such grounds were proper. (See *Carman v. Alvord* (1982) 31 Cal.3d 318, 324 [182 Cal.Rptr. 506, 644 P.2d 192].)[2]

---

[2] We asked the parties whether Los Angeles County Code section 4.62.190 has any application here. That section provides that a service supplier may seek a refund of taxes "erroneously or illegally collected or received . . . ." Respondent contends the section provided appellant a remedy that it was required to exhaust before resorting to the court. Ordinarily, a tax refund claimant need not exhaust administrative remedies where there are no evaluation

## 2. *Standing*

■ In general, one who is beneficially interested in the outcome of a controversy has standing to sue. (*CashCall, Inc. v. Superior Court* (2008) 159 Cal.App.4th 273, 286 [71 Cal.Rptr.3d 441].) Beneficial interest means a personal interest in the outcome. (*Municipal Court v. Superior Court* (1988) 202 Cal.App.3d 957, 962–963 [249 Cal.Rptr. 182].) In the tax context, this means that the person is barred from seeking a refund of a tax he or she has not paid. (*Delta Air Lines, Inc. v. State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803] (*Delta*).) The court below found that TracFone, though "required to collect taxes," was not a "taxpayer" and thus lacked standing to sue for a refund.

The court found that the essential facts alleged in the FAC brought this action squarely within the holding of *Scol Corp. v. City of Los Angeles* (1970) 12 Cal.App.3d 805 [91 Cal.Rptr. 67] (*Scol*). Scol Corporation, a retailer of alcoholic beverages, sued the City of Los Angeles for a refund of the so-called "tipplers' tax" the city imposed on the purchase of alcohol, to be collected from consumers by the seller. (*Id.* at p. 808.) Scol had paid a portion of the tax from its own funds without having collected it from its customers, and the remainder from taxes collected from customers. (*Id.* at pp. 808–809.) Scol sued for a refund, claiming the tax was unconstitutional or otherwise illegal, and sought, on behalf of itself, others similarly situated and its customers, to have the tax ordinance declared unconstitutional. (*Ibid.*) The appellate court held that Scol had no interest in the lawsuit or in the monies collected, because "[i]ts role was not that of a taxpayer, but that of a tax collector of this special use tax." (*Id.* at p. 808.) Accordingly, the court held, "Scol had no standing to sue either for itself, all others similarly situated, or on behalf of its customers." (*Ibid.*)

■ Appellant contends that *Scol* is distinguishable, or, in the alternative, that it was wrongly decided. To the extent *Scol* stands for the proposition that a party lacks standing to challenge a tax unless it is the denominated "taxpayer" under the statutory or regulatory scheme imposing the tax, it is outdated. Since *Scol* was published, "[t]here have been some refinements of the rule barring suits for refund to persons not technically regarded as 'taxpayers,' however, resulting from unusual circumstances which have been subject to judicial review." (*Delta, supra,* 214 Cal.App.3d at p. 526; see also

issues and the property was tax exempt. (*Stenocord Corp. v. City etc. of San Francisco* (1970) 2 Cal.3d 984, 987 [88 Cal.Rptr. 166, 471 P.2d 966].) Even when exhaustion of administrative remedies is required, there may be factual issues that may not be resolved on demurrer. (*Economic Empowerment Foundation v. Quackenbush* (1997) 57 Cal.App.4th 677, 692 [67 Cal.Rptr.2d 323].) As the issue was not a ground of respondent's demurrer and the record is undeveloped, we do not reach it.

*Andal v. City of Stockton* (2006) 137 Cal.App.4th 86, 92–94 [40 Cal.Rptr.3d 34] (*Andal*).) The person who paid the tax must be afforded some remedy to prevent the unjust enrichment of the taxing authority. (*Delta*, at p. 525.)

Thus, in *Andal*, the court rejected a city's claim that the phone company plaintiffs lacked standing to challenge a local fee assessed on 911 calls because they were merely collectors and not the party taxed. (*Andal, supra*, 137 Cal.App.4th at pp. 94–95.)[3] In *Delta*, the court held that an airline had standing to sue for a refund of sales taxes it allegedly overpaid on fuel it purchased from vendors. (*Delta, supra*, 214 Cal.App.3d at p. 527.) The court expressly rejected the State Board of Equalization's claim that the airline lacked standing because it was not the designated "taxpayer" under the law. (*Id.* at pp. 525–526.) Acknowledging the general rule that "persons who have not paid the tax in question are barred from bringing suits for refund of that tax," the court nevertheless concluded that "it would be irrational to hold that Delta has no standing to contest a determination of substantial funds due for which Delta was legally responsible. To hold otherwise might permit unjust enrichment of the Board." (*Id.* at pp. 526, 528.)

Respondent contends that appellant would not be without a remedy, because the court in *Scol* left open the question whether Scol possessed a right of reimbursement against its customers. (See *Scol, supra*, 12 Cal.App.3d at p. 811, fn. 4.) We disagree. The facts adequately alleged that appellant would be left without a remedy if denied standing on the ground that it was not the "taxpayer." The FAC alleged that appellant had no recourse, other than to risk the imposition of penalties and the tax, because it could never recover from its customers, with whom it had no contact. The facts are thus distinguishable from those in *Scol*, Scol paid taxes owed by others, electing not to collect them from those who owed the taxes, although it had the ability to do so. (See *id.* at p. 809.) Scol had direct contact with its customers, whereas here, the FAC alleged that appellant had no ability to collect the tax from its customers, as it had no point of sale contact with them, and they were located in many states.

The *Scol* court did not address issues of fairness or due process, although concerns of fairness require the courts to ensure the taxing authority is not unjustly enriched at the expense of persons left without a remedy. (*Delta, supra*, 214 Cal.App.3d at p. 527.) Further, as appellant notes, because California requires payment of a tax prior to challenging it, the right to due process requires some procedure affording a meaningful opportunity for

---

[3] *Andal* relied upon *Gowens v. City of Bakersfield* (1960) 179 Cal.App.2d 282 [3 Cal.Rptr. 746], in which the court held that a hotel owner who was required to collect, record, report and pay a tax had a sufficient interest to confer standing to maintain an action challenging the tax. (See *Andal, supra*, 137 Cal.App.4th at p. 94.) The *Scol* court did not discuss *Gowens*.

review. (*Batt v. City and County of San Francisco* (2007) 155 Cal.App.4th 65, 72 [65 Cal.Rptr.3d 716], citing *McKesson Corp. v. Florida Alcohol & Tobacco Div.* (1990) 496 U.S. 18, 31, 36–37, 39 [110 L.Ed.2d 17, 110 S.Ct. 2238].) We conclude that on the allegations set forth in the FAC, appellant had standing to seek a refund of taxes paid from its own funds.

### 3. *Voluntary or Involuntary*

■ The trial court again relied on *Scol* in finding appellant's payment voluntary, and therefore not refundable. (See *Scol, supra*, 12 Cal.App.3d at p. 808.) The *Scol* court had relied upon *Southern Service Co., Ltd., v. Los Angeles* (1940) 15 Cal.2d 1 [97 P.2d 963] (*Southern Service*), for the proposition that voluntary payments are not refundable. (*Scol*, at p. 810.) In *Southern Service*, the California Supreme Court explained: "It is the settled law of this state that illegal taxes voluntarily paid may not be recovered by the taxpayer in the absence of a statute permitting a refund thereof; and in the absence of such statute only illegal taxes paid under duress, coercion or compulsion are considered to have been involuntarily paid and therefore recoverable." (*Southern Service*, at p. 7; see *Scol, supra*, 12 Cal.App.3d at p. 810.)[4] As noted in Justice Allport's dissent in *Scol, Southern Service* relied upon *Brumagin v. Tillinghast* (1861) 18 Cal. 265, which stated the common law rule at the time of its pronouncement more than a century before, but the rule has been greatly relaxed since then. (*Scol*, at p. 813, dis. opn. of Allport, J., citing *Flynn v. San Francisco* (1941) 18 Cal.2d 210, 216–217 [115 P.2d 3] (*Flynn*) and *Vitale v. City of Los Angeles* (1936) 13 Cal.App.2d 704, 706 [57 P.2d 993] (*Vitale*).) In *Flynn*, the California Supreme Court, citing *Vitale*, rejected the strict common law rule under which a payment would have been considered voluntary if "made without the filing of formal protests [or] threats of seizures, confiscations or sequestrations. [Citations.]" (*Flynn*, at pp. 216–217.) " ' "Among the instances of the relaxation of the strictness of the original common law rule is the case of payments constrained by business exigencies, that is[,] payments of illegal charges or exactions under apprehension on the part of the payers of being stopped in their business if the money is not paid. It has been stated that the general rule with regard to duress of this character is that where, by reason of the peculiar facts[,] a reasonably prudent man finds that in order to preserve his property or protect his business interests it is necessary to make a payment of money which he does not owe and which in equity and good conscience the receiver should not retain, he may recover it." [Citation.] . . . "The underlying principle (that money paid under compulsion may be recovered) is said to be that, by the performance of or threat to perform some unlawful act whereby plaintiff will suffer loss, the defendant has induced the plaintiff, under

---

[4] The parties have identified no statute providing for the collection or refund of use taxes on services such as the long distance calling provided by TracFone.

circumstances sufficient to control the action of a reasonable man, to pay money which he would not otherwise have paid." ' " (*Id.* at p. 217.)

Respondent contends that *Flynn* and *Vitale* are inapplicable, because the claimants in those cases were "taxpayers." To demonstrate its point, respondent quotes the majority opinion in *Scol*: "Scol's assertion fails, and the cases cited by our colleague are inapplicable precisely because Scol did not pay taxes in making this payment." (*Scol, supra,* 12 Cal.App.3d at p. 810, italics omitted.) Appellant may not have been a "taxpayer," but the FAC alleges that TracFone did, in fact, pay the tax. The same court that decided *Scol* later made clear that it is not the appellation "taxpayer" that controls, but the act of having paid the tax. (See *Chrysler Credit Corp. v. Ostly* (1974) 42 Cal.App.3d 663, 676 [117 Cal.Rptr. 167] (*Chrysler*) ["The fact that plaintiff was not the taxpayer against whom the taxes were assessed does not preclude him from recovering."].)

Further, the same court that decided *Scol* followed *Flynn* in its later decision, taking from its language two factors to determine whether a payment was involuntary: "[F]irst, the payment must have been made 'under circumstances sufficient to control the action of a reasonable man,' and second, the plaintiff must, in fact, have considered that to protect its business interests it was 'necessary to make a payment.' " (*Chrysler, supra,* 42 Cal.App.3d at p. 678, quoting *Flynn, supra,* 18 Cal.2d at p. 217.) The court distinguished *Scol* as a case in which the taxing authority had not required Scol to pay the tax from its own funds and had not asserted that Scol was liable for the tax itself. (*Chrysler, supra,* at p. 677, citing *Scol, supra,* 12 Cal.App.3d at p. 810.)

The facts of this case are also distinguishable from those in *Scol.* Appellant did not allege, as did Scol, that it made a business decision to absorb a tax it could have collected. (See *Scol, supra,* 12 Cal.App.3d at p. 812 (dis. opn. of Allport, J.).) Rather, the FAC alleged that due to TracFone's lack of point of sale contact with the vast majority of ultimate consumers, "it was unable to collect the Tax from the ultimate consumers." Nevertheless, the FAC alleged, TracFone believed the County would hold it responsible for paying the tax, and that it was required to pay the tax "or face severe consequences"—specifically, an assessment by the County of the "principal tax, interest, and penalty." These allegations address the elements enunciated in *Chrysler, supra,* 42 Cal.App.3d at page 678. "Both such elements are matters of fact which

depend upon the evidence in each particular case and which facts are for the trial court to determine. [Citation.]" (*Ibid.*)[5]

 Whether the circumstances are such that a reasonable person would have paid the tax is a question of fact. (*Newport Bldg. Corp. v. City of Santa Ana* (1962) 210 Cal.App.2d 771, 778–779 [26 Cal.Rptr. 797], disapproved on other grounds in *The Pines v. City of Santa Monica* (1981) 29 Cal.3d 656, 660 [175 Cal.Rptr. 336, 630 P.2d 521].) Questions of fact may be resolved on demurrer only when there is only one legitimate inference to be drawn from the allegations of the complaint. (*Saliter v. Pierce Brothers Mortuaries* (1978) 81 Cal.App.3d 292, 299–300 [146 Cal.Rptr. 271] [delayed discovery].) The allegations of the FAC fairly suggest that the County's position constrained TracFone to pay the tax. We must "treat as true all of the complaint's material factual allegations, including facts that may be implied or inferred from those expressly alleged. [Citation.]" (*Amarel v. Connell* (1988) 202 Cal.App.3d 137, 141 [248 Cal.Rptr. 276].) We conclude that the FAC sufficiently alleged the *Chrysler* factors to overcome a general demurrer.

### 4. *Constitutional Claims*

Because we have found the first count of the FAC sufficient to allege a cause of action for a tax refund, we do not reach the second and third counts alleging violations of constitutional rights. Each count simply incorporated the identical facts from a general statement of facts, adding a legal conclusion to each claim regarding the effect of the incorporated facts. Thus, the FAC pleaded, in reality, a single cause of action for a tax refund. (See *Lambert v. Southern Counties Gas Co.* (1959) 52 Cal.2d 347, 353 [340 P.2d 608].) If one count of such a complaint is good as against a general demurrer, all counts will stand. (*Ibid.*) Further, in reviewing an order sustaining a general demurrer, we disregard legal conclusions except where necessary to understand the ultimate facts. (See *Nguyen v. Scott* (1988) 206 Cal.App.3d 725, 733 [253 Cal.Rptr. 800]; see generally 4 Witkin, Cal. Procedure (4th ed. 1997) Pleading, §§ 339, 345, 353, pp. 436–439, 444–447, 453–454.)

 Accordingly, because appellant had standing to bring this action, and each count sufficiently stated a cause of action (albeit the same cause of action), the general demurrers should have been overruled.

---

[5] In *Chrysler*, a secured creditor paid the debtor's property tax after the taxing authority made threats to seize and sell the property. (*Chrysler, supra,* 42 Cal.App.3d at pp. 677–678.) The court did not hold, however, that only such extreme measures would amount to an implied demand.

## DISPOSITION

The judgment is reversed and remanded with directions to the trial court to vacate its order sustaining the general demurrers of respondent County and to enter a new order overruling the demurrers. Appellant shall have costs on appeal.

Epstein, P. J., and Willhite, J., concurred.